AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas



FILED

JUN = 3 2019

David J. Bradley, Clerk of Court

| In the Matter of the Search of |  |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) ) |

Samsung SM-J327P Cell Phone (in the possession of Houston Police Department) recovered from 7207 Santiago, Houston, Texas on August 30, 2018

Case No.

## H19-1016

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ Southern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841/846 | Possession with Intent to Distribute a Controlled Substance and Conspiracy to Possession with the Intent to Distribute a Controlled Substance |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Christopher Menard
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 06/03/2019 _____

_____
*Judge's signature*

City and state: Houston, Texas

Honorable Frances H. Stacy, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched consists of five cell phones  (Hereafter **Target Devices**) seized by

Houston Police Department in the course of a narcotics investigation on August 30, 2018 which

resulted in the arrest of five subjects.  Four of the devices are currently in the possession of the

Houston Police Department the remaining device was transferred into custody of the Federal

Bureau of Investigation. This warrant authorizes the forensic examination of the Device for the

purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of U.S.C. Title 21 §§841(a)(1) and 846 and involving FERNANDO MELENDEZ, JOSE GARZA, JASON SIMPSON, MICHAEL MANNING, GREGORY HENRY or others yet unknown, including:

      a.  lists of customers and related identifying information;

      b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions, or any communications regarding same;

      c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      d.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

IN THE MATTER OF THE SEARCH OF A
BLUE MOTOROLA CELL PHONE;
BLACK/GRAY COOLPAD CELL PHONE;
GOLD SAMSUNG SM-J327P CELL PHONE;    | Case No. _____
A SAMSUNG SM-J327P CELL PHONE
AND AN APPLE IPHONE SE SEIZED BY
HOUSTON POLICE DEPARTMENT

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **Christopher Menard** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a **Special Agent** with the **Federal Bureau of Investigation**, and have been since **August 2003**. I am currently assigned to the FBI Houston Division Field Office as part of the Multi Agency Gang Task Force. As part of my current assignment, I am participating in an investigation of criminal activities committed by members of the Gangster Disciples gang and their associates.

3.    The Gangster Disciples (GDs) are a street gang which originated in Chicago and subsequently spread throughout the United States. The GDs have a formal leadership hierarchy and a history of engaging in organized criminal activity to include drug trafficking. The criminal

activities of GD members are frequently facilitated by other GD members and the proceeds of criminal activity are often used to enrich the gang as a whole through the collection of dues or donations.

4.     During the course of my employment I have conducted or participated in investigations involving narcotics trafficking and other criminal activities in which cellular phones are used by criminals in furtherance of criminal activity. I have conducted searches on cellular phones and reviewed the contents of cellular phones obtained through searches.

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched consists of five cell phones (Hereafter **Target Devices**) seized by Houston Police Department in the course of a narcotics investigation on August 30, 2018 which resulted in the arrest of five subjects. Four of the devices are currently in the possession of the Houston Police Department the remaining device was transferred into custody of the Federal Bureau of Investigation. The applied-for warrant would authorize the forensic examination of the **Target Devices** for the purpose of identifying electronically stored data particularly described in Attachment B. the devices to be searched are described as follows:

  a.   Blue Motorola Cell Phone

  b.   Black/Gray Coolpad Cell Phone FCC R38YL3632A

  c.   Broken Gold Samsung SM-J327P Cell Phone;

2

d.   Samsung SM-J327P Cell Phone;

e.   Apple iPhone SE

## PROBABLE CAUSE

7.     During the course of this investigation, I became aware that JASON SIMPSON
had been arrested by the Houston Police Department during a drug trafficking investigation
along with JOSE GARZA, FERNANDO MELENDEZ, MICHAEL MANNING and GREGORY
HENRY [hereafter SUBJECTS].   SIMPSON, MELENDEZ and GARZA were later indicted
federally for violations of drug trafficking laws while MANNING was indicted federally for
being a felon in possession of a firearm.

8.     SIMPSON is documented as a Gangster Disciple within TXGANG, a state
database of gang members under Chapter 61 of the Texas Code of Criminal Procedure which
sets out statutory requirements for gathering information regarding street gangs. Your affiant has
spoken to HPD Officer A. Garza, the lead investigator in the aforementioned narcotics
investigation which resulted in the SUBJECTS' arrests.   I have also reviewed official reports
Officer Garza has provided.  Your affiant believes Officer Garza to be credible and reliable and
the information and reporting he provided indicate the following:

9.     On three separate occasions an HPD undercover officer (hereafter UC) conducted
drug transactions in which MELENDEZ arranged drug transactions for the UC.   The first
instance occurred on August 14, 2018 when the UC contacted MELENDEZ by phone and
arranged the purchase of a quantity of codeine.   The UC then met with MELENDEZ at 7207
Santiago Street, Houston, Texas.  Upon arrival at this location, MELENDEZ advised that he was

3

only the middle man and that he was waiting for his source to arrive. Shortly thereafter, a second male arrived in a black Honda Accord bearing Texas License plate HXX4595. This male handed a bottle to MELENDEZ who in turn gave the bottle to the UC. The bottle was labeled as promethazine with Codeine. The UC provided buy money to MELENDEZ and asked about the price on a case of codeine bottles. MELENDEZ directed the UC to the occupant of the Honda who identified himself to the UC as Joey. Joey provided a price on the case of codeine bottles and left the location. By conducting research on the Honda's registration Officer Garza identified the registered owner as JOSE GARZA and was able to identify Joey as JOSE GARZA, by viewing images from arrest records which matched the suspect who had been driving the Honda.

10.     The second instance occurred on August 22, 2018. The UC arranged to purchase a quantity of ecstasy pills from MELENDEZ. The UC contacted MELENDEZ by phone. The UC arrived at 7207 Santiago Street, Houston, Texas as directed by MELENDEZ. Once at this location, the UC was directed to a black Lincoln Navigator, where the UC entered the back passenger seat and MELENDEZ got into the front passenger seat. JOSE GARZA was already in the driver seat of the vehicle. A black male (later identified as SIMPSON) got into the same vehicle, sat next to the UC and identified himself as Jason. SIMPSON told the UC that his pills were "A1," and that at one time he had supplied the entire third ward area. The UC observed that there were two bags containing pills on the center console of the vehicle between MELENDEZ and GARZA and well within their view. SIMPSON picked up a bag containing what appeared to be ecstasy pills from the center console of the vehicle and handed the bag to the UC. After examining the pills, the UC set the pills back on the center console and retrieved

4

purchase money and paid it to MELENDEZ who counted the money and handed a portion of the money to SIMPSON.  GARZA and MELENDEZ each picked up one of the pill containing bags and handed them to the UC.  As a result of the deal, HPD recovered approximately 1325 pills weighing 252.6 grams.

11.    The final deal occurred on August 30, 2018, when the UC again contacted MELENDEZ by phone, this time requesting a total of 5000 ecstasy pills.  When the UC refused to meet at any location other than MELENDEZ'S residence, MELENDEZ called back and advised the same guy from the last deal had the 5,000 pills at a cost of $4000 and would be at Melendez's residence at 7207 Santiago Street within an hour.  MELENDEZ agreed to contact the UC once the drugs arrived.  HPD officers established surveillance at this location awaiting further contact from MELENDEZ.   While waiting for a return phone call from MELENDEZ, the UC was advised by his surveillance team that a black Toyota Tacoma arrive at the location.  Shortly thereafter, MELENDEZ contacted the UC to advise that the pills were available.

12.    The UC arrived at 7207 Santiago Street and met with MELENDEZ.  The UC observed SIMPSON exit the rear passenger seat of the Tacoma holding a white grocery bag from the bottom of the bag.  The UC could observe the contents which appeared to be multiple clear bags containing ecstasy pills.  The UC, SIMPSON, MELENDEZ and GARZA entered a Pontiac G6 to conduct the deal.  They collectively engaged in conversation related to future narcotics transactions, prices and availability.  SIMPSON provided the entire bag to the UC.  When the UC noted these pills looked better than the last ones, SIMPSON said he had obtained a new source.  Both GARZA and MELENDEZ at this point, picked up bags containing pills and commented on their appearance.  The UC exited the vehicle and gave a prearranged arrest signal

and HPD officers moved in to detain the suspects. SIMPSON, GARZA and MELENDEZ were arrested in the vicinity of the Pontiac G6. MICHAEL MANNING was in the driver seat of the Toyota Tacoma, and GREGORY HENRY was in the front passenger seat of the Toyota Tacoma

13.      Approximately 1362.3 grams of ecstasy was recovered along with two firearms and multiple cell phones to include the following cell phones:

    a.   Blue Motorola Cell Phone

    b.   Black/Gray Coolpad Cell Phone FCC R38YL3632A

    c.   Broken Gold Samsung SM-J327P Cell Phone;

    d.   Samsung SM-J327P Cell Phone;

    e.   Apple iPhone SE

14.      The aforementioned cell phones were submitted into the Houston Police Department Property room along with a sixth phone recovered on scene. This phone an LG-LS450 is not included in the scope of this warrant because it was previously searched.

15.      I am also aware that on May 23, 2019, MELENDEZ was interviewed under proffer in Houston, Texas. During this proffer, MELENDEZ advised that during each of the three drug transactions conducted with the UC, MELENDEZ had contacted GARZA in order to arrange the delivery of the requested drugs. These contacts with GARZA had occurred both via phone and in person. MELENDEZ stated he had never met SIMPSON until the deal which occurred on August 22, 2018, and that he did not know SIMPSON well. MELENDEZ stated

6

that before the deal on August 30, 2018, GARZA initially sought to use a different source of supply for the pills. However, when GARZA'S first choice was unable to accommodate their request, GARZA instead contacted SIMPSON, which is also believed to have been done by phone. MELENDEZ stated he was present with GARZA when this occurred. MELENDEZ further advised that on the 30th, they had to wait for the drugs to arrive at their location. MELENDEZ also told interviewers that while he did not recall his phone number or model number, he recalled that his phone was with him when he was arrested and that it was a blue Motorola phone.

16.     On May 31, 2019 MANNING was interviewed under proffer in Houston, Texas. During this proffer he advised that on August 30, 2018 he had picked up HENRY earlier in the day. At the time, HENRY had a backpack with him. MANNING observed HENRY speak to SIMPSON by phone, and then agreed to take HENRY to meet SIMPSON under the impression that SIMPSON had money to give to HENRY. They traveled to 7207 Santiago Street where SIMPSON met with MANNING and HENRY, getting into the rear seat of the Tacoma at the direction of HENRY. MANNING stated that HENRY and SIMPSON had a brief conversation to which MANNING did not pay attention, and that he heard the sound of a bag rustling in the back seat, to which he also did not pay attention, as he thought SIMPSON was simply moving around some plastic bags which were in the back seat of the Tacoma. SIMPSON exited the Tacoma and told MANNING and HENRY he was waiting for someone to arrive, at which point MANNING stated he realized that a narcotics transaction was going to occur. MANNING did not recall the exact make or model of the phone he was using at the time of his arrest.

7

MANNING was shown a photo of the LG LS-450 phone which he identified as belonging to HENRY.

17.    In sum, as explained in the abovementioned paragraphs, cellular phones were used by the UC, MANNING, MELENDEZ, HENRY, and GARZA to communicate in order to complete the drug deals.  This includes the cellular phones that are the subject of this affidavit as they were recovered from, and identified as being utilized, in the last drug transaction on August 30, 2019.

18.    I know based on training and experience that individuals engaged in drug trafficking routinely use telephones to facilitate drug trafficking activity.  Use of telephone, text messages and/or other communication apps found on modern cell phones is an essential part of how a drug trafficker plans, arranges and conducts narcotics transactions.  For example, the UC did not communicate directly with GARZA or SIMPSON to order drugs, instead negotiating with MELENDEZ.  MELENDEZ in turn had to communicate with someone else in order to arrange for SIMPSON to deliver the drugs requested by the UC.  By MELENDEZ's own admission, GARZA was his supplier, and GARZA had others, including SIMPSON, with whom he was in contact.   Similarly, MANNING stated SIMPSON contacted HENRY telephonically and via text message to direct HENRY to the deal location at 7207 Santiago.

19.    I know based on training and experience that many, if not most, individuals will keep contacts, call logs, text messages, photos or other communications for extended periods of time.  This data tends to reside on the device in question unless actively removed by the owner of the device.  Thus, this data can be used to identify the user of a particular device.  When these communications or photos show participation in criminal activity, this data can serve as evidence

8

of criminal activity not only for the user of the device, but also for individuals with whom the user has been in contact.

20.    Thus it is reasonable to believe there will be evidence of communications related to the SUBJECTS' participation in drug trafficking held on the aforementioned devices. Such evidence could be in one or more forms including but not limited to call logs, SMS (text messages) or MMS messages, contact lists, photographs, recorded audio or through any number of Applications which allow messaging between devices.

## TECHNICAL TERMS

21.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

9

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.   Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.   Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.   Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

10

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For

11

example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

22. Based on my training and experience I know that the **Target Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

12

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

13

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.    *Manner of execution.*    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.    I respectfully submit there is probable cause to believe that the **Target Device** contains data as set forth in Attachment B which will constitute evidence of violations of U.S.C. Title 21 §§841(a)(1) and 846.  Therefore, the United States requests a search warrant pursuant to Federal Rule of Criminal Procedure 41 providing authority to search the Target Device for the data set forth in attachment B.

Respectfully submitted,

Christopher Menard
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me
on June 3, 2019; and I find probable cause .

THE HONORABLE FRACES H. STACY
UNITED STATES MAGISTRATE JUDGE

15